**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-10233

DAVID MCKINNEY; SYLVIA MCKINNEY,

Plaintiffs-Appellants,

versus

IRVING INDEPENDENT SCHOOL DISTRICT;
PATRICIA KIRKSEY, Individually;
SANDRA MAYES, Individually;
MADELEINE TEAL, Dr., Individually,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

October 18, 2002

Before STEWART and CLEMENT, Circuit Judges.[*]

CARL E. STEWART, Circuit Judge:

David and Sylvia McKinney (collectively, the "McKinneys") appeal from the district court's

---

[*] Judge Henry A. Politz was a member of the panel that heard oral arguments. However, due to his death on May 25, 2002, he did not participate in this decision. This case is being decided by a quorum pursuant to 28 U.S.C. § 46(d) (1996).

dismissal of their 42 U.S.C. § 1983 and state tort law claims. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY

First we will summarize the facts alleged in the McKinneys' complaint, which for purposes of the motion to dismiss are accepted as true and construed in the light most favorable to the McKinneys. See Nolen v. Nucentrix Broadband Networks Inc., 293 F.3d 926, 928 (5th Cir. 2002).

David McKinney ("McKinney") was employed by the the Irving Independent School District ("IISD") as a special-education teacher at the Gilbert Transitional Center ("Gilbert"), a public school for students with severe behavioral problems, emotional disturbances, and learning disabilities. In December of 1996, McKinney agreed to also drive the bus that brought the special-education students to and from Gilbert.[1]

Students are referred to Gilbert from other schools in the IISD because Gilbert provides a more heavily structured and supervised environment. No student is assigned to Gilbert without going through a process known as Admission, Review and Dismissal ("ARD"), when placement at Gilbert may be formally recommended. Gilbert is the most restrictive placement option available for public school students in the IISD.

Due to the needs of the students at Gilbert, the school environment is heavily monitored and supervised; however, the IISD did not take similar care on the school bus. Shortly after McKinney began driving the bus, he began to document frequent and serious behavioral problems on his bus route, including students fighting, throwing objects at other motorists, and leaping from the emergency exit in the rear of the bus into traffic. On one occasion, McKinney called 911 for assistance because he was unable to operate the bus safely while also monitoring the students'

---

[1]While acting as a bus driver, McKinney was employed by Dallas County Schools.

conduct. Because of these behavioral problems, McKinney repeatedly requested that the IISD place a monitor on the bus to supervise the students and ensure his safety, the safety of the children, and the safety of other motorists.[2] McKinney's requests for the appointment of a monitor were directed specifically to Sandra Mayes ("Mayes") and Patricia Kelley ("Kelley"). Dr. Madeline Teal ("Teal") also had authority to appoint a bus monitor and was involved in the decisionmaking process. McKinney's requests were denied.

On November 17, 1997, McKinney was driving through rush-hour traffic when he was attacked by a student, who sprayed him in the eyes with a fire extinguisher. Although McKinney's vision and ability to drive were greatly impaired, he was able to safely maneuver the bus to a stop. As a result of the attack, McKinney has sustained significant injuries, including asthma and reactive airways disease that impair his ability to talk, his physical endurance, and his stamina, and he has been unable to teach or drive a school bus.

On November 16, 1999, the McKinneys filed the instant suit against the IISD and three of its employees, Mayes, Kelley, and Teal, (collectively, "defendants"). The complaint alleged that defendants acted under color of law to deprive McKinney of his due process rights under the Fourteenth Amendment by knowingly and affirmatively creating a dangerous environment, which they knew to be dangerous, that resulted in his foreseeable injuries and by failing to implement a policy to ensure his safety and thus acting with deliberate indifference to his safety. Specifically, the complaint contended that by concentrating and segregating the special education students with known behavioral problems into one school and one transportation population, and by adopting and adhering

---

[2]McKinney was informed during bus driver training that the IISD alone had the right to decide whether or not monitors should be assigned to buses.

3

to a policy that did not require the assignment of any supervision to those students on the school bus, defendants "created the dangerous environment" that "was the actual and proximate cause of [McKinney's] injuries" and violated his rights "to liberty, bodily integrity, and a safe environment." Accordingly, McKinney maintained that defendants were liable under § 1983 based on a state-created danger theory. McKinney additionally asserted state law claims of negligence under the Texas Tort Claims Act and common law negligence. His wife, Sylvia McKinney, brought a claim for loss of consortium.

On December 22, 1999, defendants moved to dismiss the complaint for failure to state a claim. They argued that the state-created danger theory of recovery under § 1983 has not been adopted by this circuit, and that the state-law claims fail.

On January 23, 2001, the district court granted defendants' motion, refused the McKinneys' request for leave to amend their complaint, and entered final judgment in favor of defendants. The district court noted that this Court has not expressly adopted the state-created-danger theory as a basis for liability under § 1983, but nevertheless held that, even if McKinney could maintain a viable claim based on such a theory, the complaint did not allege facts sufficient to establish such a claim. Specifically, the district court determined that, although the pleadings described a dangerous environment, there were no allegations of facts showing that defendants' conduct increased the danger. The district court noted that it was the students' conduct that made McKinney's working environment dangerous and reasoned that while defendants may have failed to limit or reduce the danger, that was not the same as having increased it. The district court also concluded that the complaint did not allege facts sufficient to establish that defendants were deliberately indifferent because the student's attack on McKinney could have occurred regardless of whether a monitor was

4

placed on the bus, and defendants did not affirmatively place McKinney in a position of danger, stripping McKinney of his ability to defend himself, or cut off McKinney's potential sources of private aid. The district court found compelling the fact that McKinney was voluntarily on the bus, and could have resigned in order to avoid the dangerous situation, meaning that no due process obligation on defendants' part was triggered. The district court further determined that the state law claims failed. The McKinneys now appeal.

## DISCUSSION

I.    Standard of Review

We review a district court's dismissal pursuant to Rule 12(b)(6) *de novo*. Mowbray v. Cameron County, Tex., 274 F.3d 269, 276 (5th Cir. 2001). Questions of fact are viewed in the light most favorable to the plaintiffs, and questions of law are reviewed *de novo*. Id. "A Rule 12(b)(6) motion should be granted only if it appears beyond a doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." ABC Arbitrage Plaintiffs Group v. Tchuruk, 291 F.3d 336, 348 (5th Cir. 2002).

We review the denial of leave to amend the complaint for abuse of discretion. Lewis v. Fresne, 252 F.3d 352, 356 (5th Cir. 2001).

II.    42 U.S.C. § 1983

The McKinneys argue that the district court erred in dismissing their § 1983 claim.[3] They contend that the district court erred in its determination that, even if the state-created danger theory were viable, the complaint did not contain sufficient allegations to support the theory. They also

---

[3]The McKinneys make no argument regarding any of their state tort claims, and those claims are therefore waived. See, e.g., Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993) (holding that arguments not briefed on appeal are deemed abandoned).

devote a large portion of their brief to the argument that this Court should recognize and explicitly adopt the state-created danger theory. We decline to do so. In light of the recent holding of our en banc court in McClendon v. City of Columbia, __ F.3d __ (5th Cir. 2002) (en banc) ("McClendon II"), the McKinneys do not state a viable substantive due process claim under § 1983 regardless of the theory of liability, because they have failed to allege that IISD acted with deliberate indifference.

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995) ("Piotrowski I") (citation and internal quotations omitted). Municipal liability for § 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy. Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001) ("Piotrowski II"), cert. denied, 122 S. Ct. 53 (2001).

The Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). The Supreme Court has clarified, however, that this general rule is not absolute: "It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." Id. at 198. This Court has recognized one such circumstance–when the "special relationship" between the individual and the state imposes upon the state a constitutional duty to protect that individual from known threats of harm by private actors. See, e.g., Walton v. Alexander, 44 F.3d 1297, 1299 (5th Cir. 1995) (recognizing the "special relationship" exception and clarifying that it "only arises when a person is involuntarily confined or otherwise restrained against his will

6

pursuant to a governmental order or by the affirmative exercise of state power"). In addition to this "special relationship" exception, a number of our sister circuits have adopted a "state-created danger" exception to the general rule, under which a state actor who knowingly places a citizen in danger may be accountable for the foreseeable injuries that result. See, e.g., Gregory v. City of Rogers, Ark., 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) ("We have held the Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.").

At the time of the district court's decision, this Court had recognized but never adopted the state-created danger theory. See Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 200-01 (5th Cir. 1994). In McClendon v. City of Columbia, which was decided during the pendency of the present appeal, a panel of this Court "explicitly adopted and enforced this theory" and held that because McClendon demonstrated a genuine issue of material fact regarding each element of the state-created danger theory, his § 1983 claim against the defendant police officer for violation of his substantive due process rights should not have been dismissed on summary judgment. 258 F.3d 432, 436-38 (5th Cir. 2001) ("McClendon I"). In our recent rehearing of McClendon I en banc, however, we neither adopted nor rejected the state-created danger theory. The en banc court did make clear, however, that at the time of the events in McClendon, a state-created danger theory was not clearly established in this circuit such as would sustain a § 1983 claim. Any statements to the contrary in McClendon I were expressly vacated. McClendon II, __ F.3d at __. Regarding McClendon's claim, we held that regardless of the theory of liability, the defendant police officer was entitled to summary judgment

7

on grounds of qualified immunity because McClendon adduced no evidence suggesting the defendant police officer acted with deliberate indifference and, alternatively, because the law was not clearly established in this circuit. Id. As we explain further, regardless of the theory of liability employed, the McKinneys failed to allege deliberate indifference by IISD.

In order to recover under the state-created danger theory, we assume that a plaintiff would have to show, at a minimum, that: (1) the state actors created or increased the danger to the plaintiff and (2) the state actors acted with deliberate indifference. See Piotrowski I, 51 F.3d at 515. The allegations in the McKinneys' complaint are insufficient to demonstrate that defendants acted with deliberate indifference. To establish deliberate indifference, the plaintiff must show that the state actors created a dangerous environment, that they knew it was dangerous, and that they "used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." Johnson, 38 F.3d at 201. "The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." Id. (citation and internal quotations omitted).

The district court determined that the McKinneys had not sufficiently alleged deliberate indifference because they had not shown that defendants' failure to place a monitor on the bus created an opportunity for the attack to occur which would not have otherwise existed. The district court concluded that "the type of assault described in McKinney's pleadings could have occurred regardless of whether a monitor was placed on the bus." The district court further determined that there were no allegations that defendants forced McKinney to be on the bus or that they took actions to prevent him from protecting himself from the students, which also defeated the claim under the deliberate-

8

indifference prong. The McKinneys contend that they made the required showing of deliberate indifference by alleging that the bus presented a dangerous situation, that McKinney informed defendants that there was a danger and requested relief, that defendants refused to assist him and remained willfully blind to the danger, and that defendants' conduct proximately caused his injury. We disagree.

In the instant case, there is no allegation that defendants "used their authority to create an opportunity that would not otherwise have existed" for the student to attack McKinney. See Johnson, 38 F.3d at 201. As the district court recognized, there is no doubt that the McKinneys described a dangerous working environment in their pleadings–that of uncontrolled and disruptive special-education students on a moving school bus in heavy traffic. They do not, however, allege any facts showing that defendants took any affirmative action to increase the risk over the dangers inherent in this working environment. The McKinneys concede that they do not allege or argue that the supervision of the students on the bus before McKinney became the bus driver was altered or changed when he agreed to drive the bus. As defendants point out, McKinney drove the bus transporting these students for eleven months before the attack, during which time he allegedly reported numerous behavioral problems. The McKinneys do not allege that defendants' actions or inactions resulted in a more dangerous working environment on November 17, 1999 than would otherwise have existed for McKinney. This indicates that McKinney faced nothing more than the ordinary risks of driving the school bus that transported the special-education students to and from Gilbert. The McKinneys' real complaint is that defendants did not take an affirmative step, namely, provide a bus monitor to supervise the students or other safeguards for McKinney's protection while driving the bus. We hold that the due process clause did not require that defendants place a monitor

9

on the school bus. Cf. Wallace v. Adkins, 115 F.3d 427, 430 (7th Cir. 1997) (holding that a prison guard failed to show that the prison officials affirmatively placed him in a position of danger that he would not otherwise have faced by assigning him to a prison unit with a prisoner that had previously threatened to kill the guard where the guard did not show that ordering him to stay on duty created dangers other than those a guard would have faced in the absence of such order). Thus, we conclude that the district court correctly found that the facts the McKinneys' allege do not state a substantive due process claim against defendants.

III.     Leave to Amend

The McKinneys argue in the alternative that the district court abused its discretion in denying their request for leave to amend their complaint rather than dismiss it under Rule 12(b)(6). In their response to defendants' motion to dismiss, the McKinneys concluded their argument by stating that "Plaintiffs would respectfully request that leave to amend this complaint be granted in the event that the Court concludes that pleading deficiencies exist."

Rule 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." FED. R. CIV. P. 15(a). Because a Rule 12(b)(6) motion to dismiss is not a "responsive pleading," the filing of such a motion does not extinguish a party's right to amend as a matter of course. McClellan v. Miss. Power & Light Co., 526 F.2d 870, 872 n.2 (5th Cir. 1976), vacated in part on other grounds, 545 F.2d 919 (5th Cir. 1977).

The McKinneys had not previously amended their complaint. Therefore, they were entitled to amend their complaint at the time the district court granted defendants' motion to dismiss. "When, as in this case, a plaintiff who has a right to amend nevertheless petitions the court for leave to amend, the court should grant the petition." Zaidi v. Ehrlich, 732 F.2d 1218, 1220 (5th Cir. 1984).

10

Nevertheless, we conclude that the district court did not abuse its discretion by denying the McKinneys' request.

The McKinneys filed a thirty-nine page response to the motion to dismiss in which they urged that they properly plead facts to state a § 1983 claim under a state-created danger theory. Moreover, they failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and defendants to the substance of their proposed amendment. See Spiller v. City of Tex. City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997). While the McKinneys contend in their brief before this Court that any alleged deficiencies in their pleading of deliberate indifference on the part of defendants could be cured by amendment, the McKinneys failed, even at oral argument, to make clear the nature of such an amendment. Their appellate brief and questioning at oral argument reveal that the McKinneys cannot adequately allege deliberate indifference and that " 'remanding the case to allow another pleading would do nothing but prolong the inevitable.' " Id. (quoting Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986)). Thus, under these circumstances, we find no abuse of discretion in failing to grant leave to amend.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment dismissing the McKinneys' claims.

AFFIRMED.

11